Slip Op. 09-139

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
DELPHI PETROLEUM, INC.,                 :
                                        :
            Plaintiff,                  :
                                        :
        v.                              :        Before: Jane A. Restani, Chief Judge
                                        :
UNITED STATES,                          :        Court No. 06-00245
                                        :
            Defendant.                  :
_____:

## OPINION

[Defendant's motion for summary judgment denied. Plaintiff's cross-motion for summary judgment granted. Plaintiff did not file a drawback claim within three years of export, but the period for filing is extended under 19 U.S.C. § 1313(r)(1).]

                                        Dated: December 15, 2009

        James Caffentzis for the plaintiff.

        Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Tara K. Hogan); Richard McManus, Office of Chief Counsel, U.S. Bureau of Customs and Border Protection, of counsel, for the defendant.

        Restani, Chief Judge: This matter is before the court on cross-motions for

summary judgment by defendant United States ("the Government") and plaintiff Delphi

Petroleum, Inc. ("Delphi") pursuant to USCIT Rule 56. Delphi seeks reliquidation of entries and

drawback of Harbor Maintenance Taxes ("HMT") and Merchandise Processing Fees ("MPF")

paid on certain imported petroleum products. The Government asserts that the United States

Bureau of Customs and Border Protection ("Customs") properly denied Delphi's request for

drawback of HMT and MPF.

# BACKGROUND

Between 1998 and 2002, Delphi filed five drawback entries on certain petroleum products it imported and then exported as acceptable substitute finished petroleum derivatives pursuant to 19 U.S.C. § 1313(p).  (Def.'s Statement of Material Facts Not in Dispute ("Def.'s Statement of Facts")2.)  In general, Customs will repay fully, less one percent, the amount of duties paid upon goods previously imported into the United States and used in the manufacture or production of "commercially interchangeable" merchandise that is subsequently exported or destroyed.  19 U.S.C. § 1313(j).  A claimant has three years from the date of exportation or destruction of the merchandise to file a drawback claim.  19 U.S.C. § 1313(r)(1).

Customs agreed that Delphi was entitled to drawback of ninety-nine percent of the duties it paid on the petroleum products upon importation under 19 U.S.C. § 1313(p).[1] (Def's  Statement of Facts.)  Delphi's drawback entries at issue did not include claims for HMT or MPF, but included the following correspondence in attached letters:

> We have not included in this drawback application a drawback of the applicable Harbor Maintenance and Merchandise Processing fees, as we understand that U.S. Customs is appealing the decision in Texport Oil Company v. U.S., Slip Opinion 98-21[].  We are not waiving our claim with respect to the drawback of these fees.  We understand that we can file a protest, after we receive the duty drawback, with respect to these fees and that that protest will be resolved after the court rules on the U.S. Customs appeal.  If we are incorrect in this regard, please inform us and we will amend this drawback claim to include those fees.[2]

---

[1] The statutory provision states "that drawback shall be allowed" on qualified substitution of finished petroleum derivatives if "a drawback claim is filed regarding the exported article." 19 U.S.C. § 1313(p)(1).

[2] Before 2004, the drawback statute stated that the "duty, tax, or fee imposed . . . because of its importation . . . shall be refunded as drawback."  19 U.S.C. § 1313(j) (2000) (emphasis added).  The Federal Circuit in Texport held that MPF was eligible for drawback because it was

(Def.'s App. 4-5.)  When Delphi filed the claims at issue, Customs regulations expressly

prohibited HMT and MPF drawback.  See 19 C.F.R. § 191.3(b) (2002); HQ 231068 (Aug. 30,

2005), available at 2005 WL 3086998.[3]  Delphi handled its HMT and MPF claims, as described

in its letters, under the advisement of the Supervisory Drawback Liquidator, Thomas L.

Ferramosca, in the drawback section of Customs at the Port of New York.  (Pl.'s Resp. App. Tab

2.)

         In May 2003, Customs liquidated Delphi's five drawback entries and refunded the

full amount of duty drawback Delphi claimed.  (Def.'s Statement of Facts 2.)  The lengthy delay

in liquidation was due to Customs' suspension of liquidation of § 1313(p) petroleum product

claims between August 1, 1997 and June 26, 2002.[4]  (Pls Resp. App. Tab 10, at 14)  Further

---

imposed "because of" importation.  Texport Oil Co. v. United States, 185 F.3d 1291, 1296 (Fed.
Cir. 1999).  HMT was found not eligible for drawback, however, because it was a general charge
"against all shipments, regardless of whether they [were] imports."  Id.  Thereafter, Congress
passed the Miscellaneous Trade and Technical Corrections Act of 2004 ("2004 Trade Act"),
which revised 19 U.S.C. § 1313.  Pub. L. No. 108-429, 118 Stat. 2434 (2004).  The statute now
provides for drawback of duties and fees paid "upon entry or importation," rather than those paid
only "because of" the good's importation.  19 U.S.C. § 1313(j)(1) (2006).  Consequently, the
2004 Trade Act clarified that MPF and HMT are eligible for drawback claims.  See Pub. L. No.
108-429, § 1557, 118 Stat. 2434, 2579; Aectra Ref. & Mktg., Inc. v. United States, 565 F.3d
1364, 1369 (Fed. Cir. 2009).

   [3]  While by late 1999, the law on MPF apparently was settled, regulations did not change,
and confusion continued at Customs for some years, as HQ 231068 indicates.  Of course, HMT
drawback was precluded by case law.  See supra note 2.

   [4]  Customs did not liquidate section 1313(p) claims between August 1, 1997 and June, 26,
2002, "in order for Customs to address issues raised by the trade community."  (Pl.'s Resp. App.
Tab 11, at 5.)  Although "[t]hese disputes were largely resolved by . . . the 1999 Trade Act[,] . . .
[subsequent] additional time was needed for Customs [to] provide liquidation instructions to the
drawback offices on how to implement the [1999] amendments to the Customs laws."  (Id.)  This
did not resolve the MPF and HMT issues.  See Miscellaneous Trade and Corrections Act of
1999, Pub. L. No. 106-36, § 2420, 113 Stat. 127, 179.

delay ensued when Delphi's claims were destroyed in the World Trade Center, and Customs asked Delphi to reconstruct four of the five entries at issue. (Pl.'s Resp. to Def.s Mot. for Summ. J. & Cross-Mot. for Summ. J. ("Pl.'s Resp.")16; Pl.'s Resp. App. Tab 10, at 12-13.) On June 12, 2003, Delphi filed a protest requesting HMT and MPF on the five entries at issue and included calculations of how much it believed Customs owed—ninety-nine percent of the taxes and fees paid. (Pl.'s Resp. App. Tab 8.)

Customs responded to the protest in October 2005 by asking Delphi to recalculate its claims in one of the five entries and submit new HMT and MPF calculation sheets to reflect a request for drawback on products exported no earlier than June 12, 2000, because earlier claims were outside the three-year period of limitations. (See Pl.'s Resp. App. Tab 3) In January 2006, Customs denied Delphi's protest with respect to drawback requests for entries before June 12, 2000. (Pl.'s Resp. 1–2.) Delphi challenged that decision here in July 2006. Subsequently, the court stayed Delphi's case pending Aectra Refining & Marketing, Inc. v. United States, 565 F.3d 1364 (Fed. Cir. 2009). Second Am. Scheduling Order (Jan. 16, 2009).

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a). Summary judgment is appropriate where, as here, "there is no genuine issue as to any material fact," and "the moving party is entitled to judgment as a matter of law." USCIT R. 56(c).

## DISCUSSION

Delphi argues that the correspondence it included with the drawback claims at issue was sufficient to protect its HMT and MPF claims. (Pl.'s Resp. 7.) Alternatively, Delphi submits that its claims were timely because the protest after liquidation merely "perfected" the claim. (Id. at 4.) Finally, Delphi argues that if the claim was not protected or timely, the reason for such failings is directly attributable to Customs, and the limitation period is extended under § 1313(r)(1). (See id. at 15-16) The Federal Circuit's holding in Aectra precludes the first two claims, but the court agrees with Delphi's final claim.

### I.      Delphi's Claims Were Not Protected Within the Three-Year Filing Period

In order for Customs to grant a drawback claim it must be "complete." 19 U.S.C. § 1313(r)(1). Customs regulations define "a complete drawback claim" as consisting of specified forms, certificates, and notices. 19 C.F.R. § 191.5(a)(1). Aectra concluded that a complete claim also includes a correct calculation of taxes and fees sought because payment of a drawback claim is "expressly conditioned—by statute—upon compliance with regulations promulgated by the Secretary of Treasury."[5] Aectra, 565 F.3d at 1371; see 19 C.F.R. § 191.51(b)(1) (requiring a correct calculation of the drawback sought).

According to Delphi, Aectra does not preclude a drawback claim if "a timely

---

[5] Aectra imported petroleum products upon which it paid HMT and MPF between 1987 and 1997. Aectra, 565 F.3d at 1366. Aectra exported finished petroleum products, and the Government did not dispute that Aectra generally qualified for drawback. Id. at 1367. Aectra timely filed ten drawback claims, but did not include a claim for HMT or MPF. Id. Upon liquidation of its claims, Aectra filed a protest seeking drawback of HMT and MPF. Id. at 1368. The Federal Circuit held that Customs properly denied Aectra's claim for a refund of HMT and MPF because the claim was not a timely complete claim. Id. at 1375.

protective claim" is made, even if the calculations are filed outside the three-year time period.[6]

(Pl.'s Resp. 7.)  Although Aectra did not define "protective claim," the interpretation most

consistent with its holding is that an effective protective claim must be complete (i.e., it must

include calculations) and timely submitted, despite the fact that Customs would have rejected it.

The Federal Circuit expressed concern that if calculations were not required to "complete" a

claim, then "a claimant could submit a partial claim for duty that would be fully paid by Customs

as requested, and then institute a second proceeding, perhaps years later, requesting by protest an

additional amount, thereby plainly increasing the cost and complexity of processing the claim."[7]

Aectra, 565 F.3d at 1372.  Recognizing  Delphi's correspondence, which did not include

calculations for HMT and MPF drawback, as adequate notice to Customs or a "protective claim"

would seem to permit exactly what the Federal Circuit expressly sought to avoid.[8]  See Aectra,

---

[6] Delphi's argument stems from two statements made in the Aectra decision.  First, the Federal Circuit stated that "Aectra offers no explanation for why it did not include protective claims for MPF and HMT in its ten drawback claims . . . ."  Aectra, 565 F.3d at 1367 (emphasis added).  Second, the Federal Circuit held that "[the effective date] clause applies the 2004 Trade Act's amendments to unliquidated entries that already included a timely protective request for HMT."  Id. at 1370 (emphasis added).

[7] These policy concerns are significantly different from those emphasized in the protest cases cited by Delphi in support of its "notice of claim" argument.  See, e.g., Mattel v. United States, 377 F. Supp. 955, 958–59 (CIT 1974) (noting that protests  "need not be made with technical precision" as long as Customs is apprised of the objection and has an opportunity to "review [its] decision and take action accordingly").

[8] Delphi argues in its Reply that "since Delphi's notice document constituted a drawback claim for HMT and MPF, . . . . [C]ustoms must reject a drawback claim determined to be incomplete under 19 C.F.R. § 191.51(a)(1) and must notify the filer in writing."  (Pl.'s Reply to Def.'s Resp. to Pl.'s Cross-Mot. for Summ. J. & Resp. to Def.'s Mot. for Summ. J. 3–4.)  This argument fails because, by its own admission, Delphi stated in its correspondence that it "ha[s] not included in this drawback application a drawback of the applicable [HMT] and [MPF] . . . ."  (Pl.'s Resp. 8 emphasis added.)  It would be unreasonable to expect Customs to interpret such correspondence to be an "incomplete claim" under § 191.51(a)(1) and notify Delphi of that fact,

565 F.3d at 1372.

## II.     Delphi's Original Filings Were Neither Timely Supplemented Nor Perfected By Protest

A drawback claim is considered abandoned if it is not complete within three years of the date of export of the substitute merchandise.[9]  19 U.S.C. § 1313(r)(1).  Delphi filed its protest outside of the three-year period for the claims at issue.  (See Pl.'s Resp. App. Tab 8.) Delphi argues that its claim was timely, however, because its protest supplemented its earlier claims under 19 C.F.R. § 191.52(c), or otherwise perfected it under 19 C.F.R. § 191.52(b).  (See Pl.'s Resp. 10.)  These assertions are without merit.

Section 191.52(c) of title 19, C.F.R. governs amendments, which can be made only for entries that have not been liquidated and must be "made within three . . . years after the date of exportation" of the products.  19 C.F.R § 191.52(c).  Because Delphi filed its completed claims for HMT and MPF more than three years after the date of exportation and subsequent to liquidation, the amendment provision does not apply.

Similarly, Delphi's protest did not perfect timely drawback claims for HMT and MPF under § 191.52(b).[10]  Delphi argues that its drawback claims were "complete" under

---

so that it could complete its application within the three-year period.  See 19 C.F.R. § 191.52(a).

[9]  The Federal Circuit in Aectra held that the 2004 Trade Act "did not suspend" this statutory time limitation period with respect to HMT and MPF drawback claims.  Id. at 1375.

[10] Section 191.52(b) of 19 C.F.R. states:

If Customs determines that the claim is complete according to the requirements of § 191.51(a)(1), but that additional evidence or information is required, Customs will notify the filer in writing . . . .  The evidence or information required under this paragraph may be filed more than 3 years after the date of exportation . . . of the articles which are the subject of the claim.

§ 191.51(a)(1), and therefore adding calculations for HMT and MPF later in its protest was merely a perfection of the claims. (Pl.'s Resp. 10). Such a finding would be inconsistent with the Federal Circuit's holding in <u>Aectra</u> that a "complete claim" goes beyond the documentary requirements to complete a claim under § 191.51(a)(1) and includes the functional requirement to complete a drawback claim under § 191.51(b)(1)—a calculation of the fees sought.[11]

**III.   Delphi's Filing Time Period Should Have Been Extended by Customs Under 19 U.S.C. § 1313(r)(1)**

Lastly, Delphi argues that if the claims were neither complete nor filed within the three-year period, the three-year filing limit is extended under the final clause of § 1313(r)(1). (Pl.'s Resp. 15-16.) The final clause states that "[n]o extension [of the three-year filing limit] will be granted unless it is established that the Customs Service was responsible for the untimely filing." 19 U.S.C. § 1313(r)(1). Delphi asserts that Customs was responsible for the untimely filing because: (1) Customs delayed in liquidating its claims and therefore its protests including HMT and MPF drawback claims were filed outside the three-year limit; (2) any HMT and MPF drawback claims would have been futile; and (3) the Customs supervisory drawback official in charge of its claims advised it to request drawback of HMT and MPF by filing a protest after liquidation rather than including a claim for such taxes and fees in the original claim. (<u>See</u> Pl.'s Resp. 9; 15-16; Pl.'s Reply to Def.'s Resp. 7.) The first two bases are insufficient to compel

_____

19 C.F.R § 191.52(b).

[11] In its Reply, Delphi asserts that because drawback QN2-9500010-4 was filed in January 1998, prior to the effective date of the provision requiring calculations, 19 C.F.R. § 191.51(b), its motion for summary judgment should be granted for that claim. (Pl.'s Reply To Def.'s Resp. 9.) It is unnecessary to address this argument in light of the affirmative extension decision here.

Customs to grant a filing extension, but the court agrees that the last basis is the key to a

§ 1313(r)(1) extension.

As an initial matter, the basic three-year time period for filing a drawback claim is

clearly not jurisdictional, as 19 U.S.C. § 1313(r)(1) provides for extension.[12]  Customs has not

promulgated regulations indicating the circumstances or the procedures applicable for an

extension based on Customs' actions in delaying a claim.  Thus, the court addresses whether

Customs abused its discretion in not extending the time for filing to the time Delphi actually

filed its claims during the post-liquidation protest period.

The first two bases for an extension asserted by Delphi do not make Customs

"responsible" for the delayed filing.  They are, however, part of the chain of causation of the

delay.  But for the advice of the supervisory Customs official, Delphi did not need to wait for

liquidation to file its claim.  Nonetheless, because liquidation was so delayed, when Delphi

followed the advice, its claims were outside the three-year filing period.

Next, Aectra did not address futility arguments in the context of the statutory

extension provision.  It rejected futility as a basis for excused untimeliness on more general

equitable tolling principles.  See Aectra, 565 F.3d at 1373-74.  Here, because the Customs

official thought the claims were not allowed under Customs regulations and applicable case law,

he directed Delphi to use the protest of liquidation route.  It was certainly true that during the

period at issue and up to 2004, Customs would not have granted the HMT drawback claims.

While beginning in at least 2000, Customs should have been granting MPF drawback, there

_____

[12]  19 U.S.C. § 1313(r)(3) contains provisions for a time-limited extension on grounds not
implicated here.

apparently were regulatory and other practical impediments to such treatment, as discussed,

supra, note 3.  But, futility does not make Customs "responsible" for the delay, any more than it

excused the late filing in Aectra.  Futility does explain, however, part of the reason why Customs

became responsible.

    The court has addressed Delphi's claims in some detail to emphasize the

narrowness of the ground upon which Delphi succeeds.  Under the facts of this case, Delphi's

reliance on advice by the Customs supervisory drawback official for the Port of New York

rendered Customs responsible for the otherwise untimely filing and qualifies Delphi for a

statutory extension under the final provision § 1313(r)(1).

    There is a dearth of case law analyzing the final provision of § 1313(r)(1).[13]

Legislative history upon its inclusion in 19 U.S.C. § 1313(r)(1) in 1993 is equally sparse.  See

H.R. Rep. No. 103-361, at 132 (1993), as reprinted in 1993 U.S.C.C.A.N. 2552, 2682.  Congress,

however, expressed its desire that Customs promulgate implementing regulations that "should

provide, to the maximum extent possible under law, that claimants will be encouraged to export

merchandise through the allowance of drawback claims.  Such regulations should provide for

fair treatment of the business community, while ensuring that Customs has the necessary

enforcement information."  Id.  On its face, and consistent with this history, § 1313(r)(1) creates

an explicit exception to the three-year time period limitation for drawback claims when Customs

---

   [13] While Aectra makes clear that only Congress may "suspend" the three-year time period of § 1313(r)(1), see Aectra 565 F.3d at 1370, Aectra found a case for administrative extension had not been made, id. at 1375.  The extension provision was inapplicable because Aectra's failure to timely file could not be attributed to the agency.  Id.  Apparently, Aectra did not attempt the type of factual showing made here.

is "responsible" for the tardiness.  The statute is written in terms which permit an extension by

Customs, but Customs has not promulgated any regulations to implement this provision.

Further, the parties have cited no instances in which Customs has granted such extensions, but

the defendant seems to agree that if Customs makes the filing "impossible," an extension should

be granted.  See Alyeska Pipeline Serv. Co. v. United States, 643 F. Supp. 1128 (CIT 1986)

(permitting protest in non-drawback claim context where Customs made filing impossible).

Customs has not recognized the crucial difference in the rigid time limit of 19 U.S.C. § 1514(c)

for protest and the language of the statute at hand.  This may go far in explaining why, as Delphi

asserts, Customs has never allowed any extension under § 1313(r)(1).

       Customs ignores its duty where it seeks to rewrite the statute to limit it to

extremely narrow fact patterns, such as a case of absolute impossibility.[14]  The statute is not so

limited; it allows for an extension of time for filing a drawback claim when Customs is

responsible for the late filing.  Here, that is the case.

       Delphi, justifiably confused by the state of the law—statutory, regulatory, and

court-made—sought assistance from the very person responsible for the implementation of the

applicable procedure.  Delphi did not rely on the advice of a low-level employee in some far-

flung outpost, who could not be expected to provide reliable guidance.[15]  Instead, Delphi relied

---

[14]  Defendant hints, without admitting as much, that perhaps a ruling from Customs' headquarters might suffice.  Customs' "responsibility" has not been limited in any way to a particular office or position.

[15]  Both parties' reliance on equitable tolling and estoppel principles to support their positions on whether that reliance on a government official is enough to bind the government is misplaced.  At issue is not the equitable tolling of the statute of limitations, but rather a statutorily provided extension when Customs is responsible for the late filing.  See 19 U.S.C.

upon the advice of the Supervisory Drawback Liquidator in the drawback section of Customs at

the Port of New York, who detailed the procedure to be followed in the light of regulations that

did not permit the claims.  Delphi's timely correspondence indicated it was willing and ready to

present the complete claims, but was told not to do so until other events transpired, that is,

liquidation, so that a protest could be filed.  (Pl.'s Resp. App. Tab 2.)  Customs did not respond

to Delphi's inquiries as to the sufficiency of its filings because the same Supervisory Drawback

Liquidator offering advice received Delphi's correspondence, with which he obviously

concurred.  (Id.)  This is set forth in detail in the affidavits filed by Delphi, including the

affidavit of Thomas L. Ferramosca, the Supervisory Drawback Liquidator responsible for the

advice that dictated Delphi's actions.  (Id.)   These facts are not disputed by the Government and

distinguish this case from Aectra.  (See Def.'s Mot. 1.)  In the light of these facts, under 19

U.S.C. § 1313(r)(1), Customs is deemed responsible for Delphi's delayed HMT and MPF filings

because Delphi had no clear administrative path to follow and a responsible official

unknowingly misled Delphi as to the proper course.  Thus, Customs abused its discretion is not

granting the extension of time to file the drawback claims.

---

§ 1313(r)(1);  cf. United States v. Brockamp, 519 U.S. 347, 352 (1997) (recognizing that an
explicit listing of an exception to statutory time limits demonstrates congressional intent to
provide relief on that basis to the exclusion of equitable remedies).

Court No. 06-00245                                                    Page 13

**CONCLUSION**

       Delphi's delayed drawback claims filing is permitted under § 1313(r)(1) because

on these facts Customs is responsible for any noncompliance.  Accordingly, the Government's

motion for summary judgment is denied, Delphi's cross-motion for summary judgment is

granted, and Delphi's claims for drawback of HMT and MPF are allowed.  Judgment for plaintiff

will be entered accordingly.


                                                     __/s/ Jane A. Restani__
                                                       Jane A. Restani
                                                       Chief Judge

Dated this  15th day of December, 2009.
New York, New York.

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| DELPHI PETROLEUM, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: Jane A. Restani, Chief Judge |
| | : | |
| UNITED STATES, | : | Court No. 06-00245 |
| | : | |
| Defendant. | : | |

_____:

## <u>JUDGMENT</u>

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

ORDERED that Defendant United States' Motion for Summary Judgment is denied, and Plaintiff Delphi Petroleum, Inc.'s Cross-Motion for Summary Judgment is granted. Defendant shall process the claim for drawback of fees and taxes in accordance with the opinion filed herewith, and refund money due with such interest as is required by law.


_____/s/ Jane A. Restani_____
Jane A. Restani
Chief Judge


Dated this 15th day of December, 2009
New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____

Deputy Clerk