Slip Op. 10-77

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
DELPHI PETROLEUM, INC.,                 :
                                        :
            Plaintiff,                  :
                                        :
        v.                              :        Before: Jane A. Restani, Chief Judge
                                        :
UNITED STATES,                          :        Court No. 06-00245
                                        :
            Defendant.                  :
_____ :

## <u>OPINION</u>

[Plaintiff's motion for attorney's fees is denied.  Plaintiff's motion for costs is granted.]

Dated: July 9, 2010

<u>Delphi Petroleum, Inc.</u> (<u>Ronald Gumbaz</u>) for the plaintiff.

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, <u>Todd M. Hughes</u>, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>Tara K. Hogan</u>); <u>Richard McManus</u>, Office of Chief Counsel, U.S. Customs and Border Protection, of counsel, for the defendant.

Restani, Chief Judge: This matter is before the court on the application of plaintiff

Delphi Petroleum, Inc. ("Delphi") for an award of attorney's fees and costs pursuant to the Equal

Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Delphi sought reliquidation of entries and

drawback of Harbor Maintenance Taxes ("HMT") and Merchandise Processing Fees ("MPF")

paid on certain imported petroleum products and now applies for the legal fees and costs

incurred during the course of its lawsuit against the United States.[1]  The United States contests

this application, arguing that its administrative actions and litigation arguments were not in bad

_____

[1] Delphi seeks $34,276.51 for attorney's fees and $350.00 for filing costs.  (Mem. in Supp. of Pl.'s Mot. for Att'ys Fees & Costs ("Pl.'s Mot.") 3.)

faith.  For the reasons stated below, the court denies Delphi's motion for attorney's fees and

grants Delphi's motion for costs.

## BACKGROUND

The facts of this case were well documented in the previous opinion.  See Delphi

Petroleum, Inc. v. United States, 662 F. Supp. 2d 1348 (CIT 2009).  The court presumes

familiarity with that decision, but briefly summarizes the facts relevant to this motion.

Between 1998 and 2002, Delphi filed five drawback entries on certain petroleum

products it imported and then exported as acceptable substitute finished petroleum derivatives

pursuant to 19 U.S.C. § 1313(p).[2]  Delphi, 662 F. Supp. 2d at 1349.  In the context of conflicting

and even prohibitory regulatory and judge-made law and following the advice of Supervisory

Drawback Liquidator Thomas L. Ferramosca, Delphi waited to file its drawback claims for HMT

and MPF in its post-liquidation protest.[3]  Delphi, 662 F. Supp. 2d at 1350 51.  Because Customs

---

[2] In general, Customs will repay fully, less one percent, the amount of duties paid upon goods previously imported into the United States and used in the manufacture or production of "commercially interchangeable" merchandise that is subsequently exported or destroyed.  19 U.S.C. § 1313(j).  A claimant has three years from the date of exportation or destruction of the merchandise to file a drawback claim.  Id. § 1313(r)(1).

[3] When Delphi filed the claims at issue, Customs' regulations expressly prohibited HMT and MPF drawback.  See 19 C.F.R. § 191.3(b)(1) (2) (2002).  Before 2004, the drawback statute stated that the "duty, tax, or fee imposed . . . because of its importation . . . shall be refunded as drawback."  19 U.S.C. § 1313(j) (2000).  In 1999, the Federal Circuit held that MPF was eligible for drawback, as it was imposed because of importation.  Texport Oil Co. v. United States, 185 F.3d 1291, 1296 (Fed. Cir. 1999).  HMT was found not eligible for drawback, however, because it was a general charge "against all shipments, regardless of whether they [were] imports."  Id.  While by late 1999 the law on MPF seemed to be settled, regulations did not change and confusion continued at Customs for some years.  See HQ 231068 (Aug. 30, 2005), available at 2005 WL 3086998.  Thereafter, Congress passed the Miscellaneous Trade and Technical Corrections Act of 2004, which clarified that MPF and HMT were eligible for drawback claims.

(continued...)

delayed liquidation of Delphi's drawback claims between August 1997 and June 2002, several of

Delphi's HMT and MPF drawback claims made "by protest" were precluded by the statutory

three-year time limitation from the date of export for filing drawback claims.  Id. at 1350 51 &

n.4.  In January 2006, Customs denied Delphi's protest with respect to the HMT and MPF

drawback requests for entries before June 12, 2000.  Id. at 1351.  Delphi challenged that decision

here in July 2006, and the court held that Delphi's delayed drawback claims filing was allowed

under the time extension permitted by 19 U.S.C. § 1313(r)(1) because Customs was

"responsible" for Delphi's delayed filing.  Id. at 1355.  Delphi now seeks attorney's fees and

costs pursuant to § 2412(a)-(b) of EAJA.

## DISCUSSION

Pursuant to United States Court of International Trade ("USCIT") Rule 54.1,

"[t]he court may award attorney's fees and expenses where authorized by law."  USCIT R.

54.1(a).  Although the United States is generally immune from suit, EAJA waives the United

States' sovereign immunity for purposes of allowing a prevailing party to recover attorney's fees

and expenses under certain circumstances.  See 28 U.S.C. § 2412.  Delphi seeks attorney's fees

pursuant to 28 U.S.C. § 2412(b), which allows fee-shifting against the United States "to the same

extent that any other party would be liable under the common law or under the terms of any

statute which specifically provides for such an award."[4]  Id. § 2412(b).  Under the common law

---

[3](...continued)
See Pub. L. No. 108-429, § 1557, 118 Stat. 2434, 2579 (2004); Aectra Ref. & Mktg., Inc. v. United States, 565 F.3d 1364, 1369 70 (Fed. Cir. 2009).

[4] The court notes that Delphi does not seek an award of attorney's fees under the more
(continued...)

"American Rule," the prevailing party may not collect attorney's fees from the losing party.

Centex Corp. v. United States, 486 F.3d 1369, 1371 (Fed. Cir. 2007).  In certain rare

circumstances, however, an exception to this rule applies when a party opponent is found to have

"acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Chambers v. NASCO,

Inc., 501 U.S. 32, 45  46 (1991) (internal quotation marks and citations omitted); see also

Amsted Indus. Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 378 (Fed. Cir. 1994).  Bad faith

is a high standard that warrants fee-shifting when a court finds "that fraud has been practiced

upon it, or that the very temple of justice has been defiled."  Universal Oil Prods. Co. v. Root

Ref. Co., 328 U.S. 575, 580 (1946).

        In the underlying dispute, Delphi prevailed in its argument that the three-year

time limit for filing its drawback claims should have been extended under the final clause of 19

U.S.C. § 1313(r)(1), which states that "[n]o extension will be granted unless it is established that

the Customs Service was responsible for the untimely filing." 19 U.S.C. § 1313(r)(1).  In this

application, Delphi's assertion of Customs' bad faith is threefold.  First, Delphi asserts that the

very failure of Customs to extend the statutory time limit for filing its drawback claims was in

bad faith.  (Pl.'s Mot. 2.)  Second, Customs allegedly acted in bad faith when it refused to admit

that it had "suspended" the liquidation of Delphi's drawback claims and refused to settle the

---

[4](...continued)
common EAJA provision, 28 U.S.C. § 2412(d)(1)(A), which provides for fee-shifting when
certain requirements are met "unless the court finds that the position of the United States was
substantially justified."  28 U.S.C. § 2412(d)(1)(A).

claim, which Delphi asserts gave rise to an otherwise avoidable lawsuit.[5]  (See Pl.'s Mot. 5  6,

10, 16 .)  And third, Customs allegedly acted in bad faith when it gave conflicting answers to

Delphi's interrogatories asking why it delayed liquidation of Delphi's drawback claims.  (See

Pl.'s Mot. 10  13.)  Delphi's first two assertions are addressed together.

## A.      Customs' Refusal to Process Delphi's Drawback Claims

The Federal Circuit has "taken the position that fee awards cannot be assessed

based on claims of bad faith primary conduct."  Centex Corp., 486 F.3d at 1372.  Primary

conduct is that which "precedes the accrual of the claim in question" and is "related to the

plaintiff's substantive claim."  Id. at 1371  72, 1375.  The Federal Circuit acknowledged,

however, "that there is some case law support for the proposition that the judicial process is

abused by a defendant's bad faith response to a claim for relief after the claim accrues but before

the judicial process is formally invoked."[6]  Id. at 1372 n.1.  Those courts that have found bad

faith "primary conduct" that warranted fee-shifting emphasized that the plaintiff was forced to

litigate and defend a clear right.  See Vaughan v. Atkinson, 369 U.S. 527, 531 (1962) (noting

that plaintiff was "forced to hire a lawyer and go to court to get what was plainly owed him

under laws that are centuries old"); see also Mar. Mgmt., Inc. v. United States, 242 F.3d 1326,

_____

[5] According to Delphi, Customs' actions "caused [Delphi's] untimely filing, forced
Delphi to incur the legal expenses," and "[b]ut for Custom[s'] bad faith and wanton disregard of
its responsibilities, Delphi's claims would have been paid in full without litigation."  (Pl.'s Mot.
13.)

[6] The Federal Circuit did not decide the exact parameters of eligibility for fees, but
rejected fees based on bad faith conduct that precedes the accrual of the claim.  See id. at 1375.
We need not explore the issue further, however, because Customs' alleged bad faith pre-
litigation conduct does not warrant fee-shifting in this case.

1335 (11th Cir. 2001) (per curiam); Am. Hosp. Ass'n v. Sullivan, 938 F.2d 216, 220 (D.C. Cir.

1991).

   Although Delphi would have been entitled to drawback of its HMT and MPF if its

claims were timely filed, Delphi was not clearly entitled to a 19 U.S.C. § 1313(r)(1) statutory

extension of the time to file.  Thus, Customs did not act in bad faith when it refused to process

Delphi's delayed claims.  At the time Delphi pressed its claim, Customs had not promulgated

any regulations to implement the extension provision, nor were the parties in the underlying case

able to cite to any instance in which Customs had granted an extension under the statutory

provision.  Delphi, 662 F. Supp. 2d at 1354.  Furthermore, no court had defined what conduct

would make Customs "responsible" for a delay in filing so as to warrant an extension.

Accordingly, this is not a case where Delphi was "forced to hire a lawyer and go to court to get

what was plainly owed [it] under laws that are centuries old."  Vaughan, 369 U.S. at 531.

   Next, government officials are presumed to have acted in good faith,  Galen Med.

Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004); Allegheny Bradford Corp.

v. United States, 350 F. Supp. 2d 1332, 1338 (CIT 2004), and Delphi has not met its burden by

showing that Customs' pre-litigation conduct was so irregular as to amount to bad faith.

Customs indicated that the delay in processing Delphi's drawback claims was due to

"destruction of documents that were housed in the World Trade Center in 2001" (Pl.'s Mot. Ex.

17, at 12), and that Delphi's delayed claims were "selected for review; therefore, liquidation

could not occur until Delphi satisfied the request for information" (Pl.'s Mot. Ex. 18, at 3).  The

court also notes the general state of confusion during the relevant time period as to the eligibility

of MPF and HMT for drawback   the law was in a state of flux, see supra note 2, and Customs

did not liquidate § 1313(p) claims between August 1997 and June 2002 "to address issues raised

by the trade community," Delphi, 662 F. Supp. 2d at 1351 n.4 (internal quotation marks and

citation omitted).  Delphi does not provide any evidence demonstrating that Customs acted in

bad faith when it did not process Delphi's claims promptly and delayed liquidation.  Thus, bad

faith on the part of the Government has not been demonstrated in connection with either the

processing of the administrative claims or the Government's defense of this action.

**B.      Alleged Bad Faith Discovery Responses**

          Delphi also asserts that Customs acted in bad faith when it allegedly gave

contradictory responses to interrogatories asking why Customs delayed liquidation of Delphi's

drawback claims.[7]  As indicated, § 2412(b) allows for a party to recover attorney's fees "to the

same extent that any other party would be liable . . . under the terms of any statute which

provides for such an award."  28 U.S.C. § 2412(b).  The Federal Circuit held that this provision

includes Federal Rule of Civil Procedure 37, which gives a court the "authority to award

sanctions against a party for failing to cooperate during the discovery process."  M.A. Mortenson

Co. v. United States, 996 F.2d 1177, 1181 (Fed. Cir. 1993).  USCIT Rule 37, which mirrors the

federal rules, permits the Court to award attorney's fees and expenses when a party fails to

correct a response to an interrogatory "if the party learns that in some material respect the

disclosure or response is incomplete or incorrect."  USCIT R. 26(e)(1)(A) (emphasis added); see

---

          [7] One interrogatory answered by the Government stated that the delay was due to the
destruction of documents in the World Trade Center in 2001.  (Pl.'s Mot. Ex. 17, at 12.)  Another
interrogatory response denied that liquidation was suspended.  (Pl.'s Mot. Ex. 18, at 5.)  Customs
submitted a document during discovery, however, that indicated that Customs had suspended
liquidation.  (Pl.'s Mot. Ex. 19.)  The problem may have been semantic.  What is meant by
"suspension" and what is a "hold" or informal delay is unclear.

Court No. 06-00245                                                                          Page 8

USCIT R. 37(c)(1)(A).  Of course, the Court can also award attorney's fees and expenses when it

grants a motion for an order compelling disclosure.  USCIT R. 37(a).  No such motion was filed.

       Customs' somewhat inconsistent responses to Delphi's interrogatories do not

warrant awarding attorney's fees under either aspect of the rule.  Customs likely was not under

an obligation to clarify interrogatory answers because the issue of whether Customs had

"suspended" liquidation, and the reason therefor, was not <u>material</u>.  It was undisputed that there

was an uncustomary delay in liquidation.  Delphi delayed filing its drawback claims for HMT

and MPF because it was told to wait until the time for protesting liquidation to do so.  Why

liquidation was delayed is irrelevant.  Further, as explained in footnote seven, the court sees in

the interrogatory answers confusion or, at most, lack of attention to immaterial matters, as

opposed to an attempt to obstruct.  Accordingly, Delphi's motion for attorney's fees is denied.

Delphi's motion for filing costs is granted pursuant to 28 U.S.C. § 2412(a) and USCIT R.

54(d)(1).

 

                     /s/ Jane A. Restani
                     Jane A. Restani
                     Chief Judge

Dated: This 9th day of July, 2010.
      New York, New York.

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

DELPHI PETROLEUM, INC.,            :
                                          :

               Plaintiff,       :

                                          :

               v.             :      Before: Jane A. Restani, Chief Judge

                                          :

UNITED STATES,                 :      Court No. 06-00245

                                          :

               Defendant.     :

_____:

### JUDGMENT

This case having been submitted for decision and the court, after deliberation, having

rendered a decision therein; now, in conformity with that decision,

IT IS HEREBY ORDERED that the motion for attorney's fees is denied and the motion

for filing costs is granted.

                                      _____/s/ Jane A. Restani_____

                                          Jane A. Restani
                                          Chief Judge

Dated: This 9th day of July, 2010.
        New York, New York.

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____          By: _____
                                                          Deputy Clerk